IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MUSSON BROTHERS, INC., ) | |
| ) | |
| Plaintiff, ) | No. 13 C 3506 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| CENTRAL STATES, SOUTHEAST AND ) | |
| SOUTHWEST AREAS HEALTH AND ) | |
| WELFARE FUND, CHARLES A. WROBLEY, ) | |
| JERRY YOUNGER, GEORGE J. WESTLEY, ) | |
| MARVIN KROPP, ARTHUR H. BANTE, JR., ) | |
| GARY F. CALDWELL, RONALD DESTEFANO, ) | |
| GARY R. MAY, and TEAMSTERS GENERAL ) | |
| UNION LOCAL 662, ) | |
| ) | |
| Defendants. ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiff Musson Brothers, Inc. ("Musson") filed this action under 28 U.S.C. § 2201 for declaratory judgment and injunctive relief[1] against defendants Central States Health and Welfare Fund, a multiemployer benefit plan, its trustees[2] (collectively, the "Fund"), and the Teamsters General Union Local 662 ("the Union"). Musson seeks a declaration that it does not owe contributions to the Fund on behalf of seven of its employees under agreements that it entered with defendants. The Fund filed a counterclaim, which alleges in Count One that Musson failed to pay contributions due for two employees covered by the collective bargaining agreements with the Union and the bargaining unit participation agreements, in violation of Section 515 of

---

[1]Musson initially filed this action in the Western District of Wisconsin. Defendant filed a motion to transfer venue to the Northern District of Illinois, which the district court in Wisconsin granted.

[2]Defendants Charles A. Wrobley, Jerry Younger, George J. Westley, Marvin Kropp, Arthur H. Bante, Jr., Gary F. Caldwell, Ronald Destefano, and Gary R. May are referred to as "the Trustees."

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, the collective bargaining agreements, the bargaining unit participation agreements and the Health and Welfare Fund Trust Agreement ("Trust Agreement"). In Count Two, the Fund alleges that Musson owes contributions for seven non-covered employees under an agreement (the "Non-Bargaining Unit Participation Agreement") between the Fund and Musson and the Trust Agreement.

Musson initially admitted liability on Count One of the Fund's counterclaim and asserted a defense to Count Two that the employees in question were excluded from participation in the Fund because of their various employment positions. The Fund then filed a motion for partial summary judgment on the issue of liability on both counts of the counterclaim. Concurrent with its response to the Funds' motion, Musson filed a Motion for Leave to File an Amended Answer to the Fund's counterclaim to withdraw its admission of liability on Count One and assert a new defense to the Funds' claims of delinquent contributions.

For the reasons described below, plaintiff's motion to amend its answer is denied. The Fund's motion for partial summary judgment is granted.

## FACTS

Musson and the Union are parties to multiple collective bargaining agreements that span the period of April 1, 2001, through March 31, 2013 ("the CBAs")[3], as well as Participation Agreements in 2001 and 2007 ("the 2001 Bargaining Unit Participation Agreement" and "the 2007 Bargaining Unit Participation Agreement," respectively). These agreements required

---

[3]The various CBAs were signed roughly every three years. They include: the 2001-2004 CBA, the 2004-2007 CBA, the 2007-2010 CBA, and the 2010-2013 CBA.

Musson to contribute to the Fund for each "covered employee." The participation agreements defined "covered employee" as:

> [A]ny full-time or part-time employee covered by a collective bargaining agreement requiring contributions to the Fund … Covered Employee shall not include any person employed in a managerial or supervisory capacity …

In 2001, Musson also entered into the Non-Bargaining Unit Participation Agreement directly with the Fund, to which the Union was not a party. That agreement required Musson to contribute to the Fund for "each and every individual employed by the employer on either a full-time or part-time basis who is not covered by the collective bargaining agreement between the Employer and the Union." The terms of the agreement stated that it would remain in effect "until 30 days after service of a written notice served by either the Health and Welfare Fund or the Employer of their intent to terminate this Participation Agreement." Musson gave notice to terminate the agreement on October 15, 2012, and elected March 31, 2013, as the date of termination.

In September 2012, the Fund conducted an audit of the work history records of Musson's employees, pursuant to the provisions of the Trust Agreement that permitted such an audit. The audit encompassed the time period between January 1, 2008, and December 31, 2010. As a result of that audit, the Fund alleges that Musson failed to accurately report the work history of its employees and demanded contributions for nine employees. Two of the employees, Gary Robinson and Robert Langeberg, were covered employees under the participation agreements, and the Fund demanded at least $71,000 for unpaid contributions related to those two covered

3

employees. The remaining seven employees were employees not covered by the CBAs,[4] and the Fund demanded contributions for those employees under the Non-Bargaining Unit Participation Agreement.

On October 15, 2012, in response to the Fund's demand letter (which preceded this litigation), Musson stated that contributions were not due on five of the seven non-covered employees because they had other health coverage, and that the two other non-covered employees were ineligible because the Union agreements excluded part-time employees from the bargaining unit. Musson conceded that contributions were due for the remaining two covered employees.

On December 19, 2012, however, Musson revised its position and indicated that it did not owe contributions for the seven non-union employees because the 2001 Non-Bargaining Unit Participation Agreement was "trumped in spades" by the 2007 Bargaining Unit Participation Agreement and the 2007-2010 CBA. On December 26, 2012, Musson instituted the instant action in the Western District of Wisconsin, seeking a declaratory judgment that Musson did not owe the amounts alleged by the Fund in their demand.

On January 23, 2013, the dispute over the contributions was presented to the Board of Trustees of the Fund at their regularly scheduled meeting. The Board of Trustees determined that the 2001 Non-Bargaining Unit Participation Agreement was not superseded by the 2007 Bargaining Unit Participation Agreement or the CBAs, and that contributions were due for those seven non-covered employees.

---

[4]The non-covered employees are: John R. Riopel, Andrew J. Ruffing, Paul A. Heikkinen, Jr., James B. Rice, John K. Kerr, Delore J. Deau, and David C. Polak.

In its January 2014 response to the Fund's motion for summary judgment and in its motion to amend its answer, Musson now argues that it did not have proper notice of the January 2013 meeting, that it should have been given the opportunity to present its case to the Board, and that no deference should be awarded to the Trustees' "findings." Musson argues that, had it been given the chance, Musson would have argued to the Board that John Kaiser, a Union representative, acted as the Fund's agent in the 2010 negotiations between the Union and Musson. Musson alleges that Kaiser orally agreed in those negotiations that Musson could continue its practice of selective participation in other health plans, thereby modifying the terms of the participation agreements and, therefore, the contributions due.

## DISCUSSION

**I.  Motion to Amend Answer to Counterclaim**

Musson seeks to amend the answer it initially filed to the Fund's counterclaim. The proposed amended answer withdraws Musson's previous admission of liability on Count One, and puts forth a new defense to both counts: that John Kaiser, a Union representative, made an oral modification to the 2010-2013 CBA and the 2007 Participation Agreement that exempts all nine employees from contributions to the Fund. Musson argues that it initially conceded liability on Count One in an effort to reach a settlement with the Fund, and that the breakdown of settlement negotiations has caused it to reconsider its position. Musson further argues that "since the inception of this litigation" it has consistently taken the position advanced in its response to the Fund's motion for summary judgment regarding Kaiser and the alleged oral modifications to those agreements. Therefore, Musson contends, the Fund will not be prejudiced by the proposed amendment to the answer. The Fund opposes the motion.

5

Fed. R. Civ. P. 15 provides that a party may amend its pleadings with leave of the court, and that the court "should freely give leave when justice so requires." The court is not required to grant leave to amend a pleading, however, when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment." Payne for Hicks v. Churchich, 161 F.3d 1030, 1036 (7th Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The Fund has not objected to the amendment of the answer on grounds other than futility, and the court will therefore evaluate only that question.[5] An amendment would be futile if the proposed amended pleading would not survive a motion to dismiss. Brunt v. Service Employees Intern. Union, 284 F.3d 715, 721 (7th Cir. 2002).

The Fund argues that amendment would be futile because any evidence of an oral modification would be barred under the parol evidence rule. "The parol evidence rule provides that evidence of prior or contemporaneous agreements or negotiations may not be introduced to contradict the terms of a partially or completely integrated writing." Merk v. Jewel Food Stores Div. of Jewel Companies, Inc., 945 F.2d 889, 892 (7th Cir. 1991) (citing Restatement (Second) of Contracts § 215). Where the language of an agreement appears to be the final manifestation of the parties' intent, and there is no evidence to the contrary, the agreement is considered to be integrated. Restatement (Second) of Contracts, § 209(3). Whether an agreement is fully integrated is generally a question of law to be resolved by a court. Merk, 945 F.2d at 893.

---

[5]The court notes that, in its reply, Musson chose not to respond substantively to the Fund's argument that amendment would be futile. The court therefore evaluates the argument without the benefit of a response from Musson.

The court finds the relevant agreements between the parties to be integrated agreements. The 2010-2013 CBA contains an integration clause and provides that "[t]he Agreement sets forth the entire understanding and agreement of the parties and may not be modified in any respect except by writing subscribed to by the parties." The Trust Agreement and 2007 Bargaining Unit Participation Agreement, coupled with the 2010-2013 CBA, represent the complete and final manifestation of the parties' intent regarding Union employees. The Trust Agreement coupled with the Non-Unit Participation Agreement represents the complete and final manifestation of the parties' intent regarding non-covered employees. In its reply to the motion to amend, Musson even admits that the agreements are integrated agreements. Further, the agreements "contain[] such language as imports a complete legal obligation," consistent with an integrated writing. Davis v. G.N. Mortgage Corp., 396 F.3d 869, 879 (7th Cir. 2005). The terms of the agreements are unambiguous, and Musson admits as much.[6]

The parol evidence rule bars Musson's proffered defense because Musson seeks to explain the "real" terms of the contract despite the complete writings of the agreements between the parties. See Hoover v. ABF Freight System, Inc., 2008 WL 1805392, at *8 (C.D.Ill. 2008) ("The parol evidence rule bars the introduction of the most questionable form of extrinsic evidence– self-serving testimony by one of the parties as to what the parties 'really' agreed to in the negotiations leading up to the signing of the contract.").

More importantly, Musson's oral modification defense is futile because the Seventh Circuit has held that § 515 of ERISA (29 U.S.C. § 1145), which governs delinquent

---

[6] Musson does not argue that parol evidence is required to resolve an ambiguous term, but rather to identify a modification.

7

contributions, and § 302(c)(5)(B) of the NLRA (29 U.S.C. § 186(c)(5)(B)), regarding employer contributions to a pension plan, "prevent[ ] a court from giving force to oral understandings between union and employer that contradict the writings." Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1154 (7th Cir. 1989); see also Cent. States, Se. & Sw. Areas Pension Fund v. Auffenberg Ford, Inc., 2009 WL 2145384, at *5 (N.D. Ill. July 9, 2009) aff'd, 637 F.3d 718 (7th Cir. 2011) (stating that "federal law precludes a court from considering an oral agreement allegedly made between an employer and a union if that oral agreement contradicts the written agreements"). Although Musson alleges that the modification was also made between Musson and Fund, because of Kaiser's alleged agent status (a contested issue that the court need not reach), oral modifications are still prohibited even when the Fund is a party. See Orth v. Wisconsin State Employees Union Counsel 24, 546 F.3d 868, 872 (7th Cir. 2008).

Because Musson's proposed amended answer would be futile, the court denies Musson's motion to amend its answer to the counterclaim.

## II. Motion for Summary Judgment

The Fund has moved for partial summary judgment on the issue of liability on both counts of the counterclaim. Musson has responded consistent with the position taken in its proposed amended answer to the counterclaim.[7] Because the court has denied Musson's motion

---

[7] The court notes that Musson's arguments are unnecessarily difficult to comprehend because Musson chose to articulate its arguments in its Response to the Fund's L.R. 56.1 statement and an affidavit by counsel, instead of in its supporting memorandum of law. "Judges are not like pigs, hunting for truffles buried in briefs" or Responses to L.R. 56.1 statements. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Under L.R. 56.1, a party's "concise response" should contain "a response to each numbered paragraph in the moving party's

(continued...)

to amend its answer, the court will not consider Musson's new arguments regarding oral modifications to the agreements.

Under § 515 of ERISA, employers are required to make pension and welfare fund contributions agreed to in collective bargaining agreements to the extent the terms of the agreement are not inconsistent with law. Central States Pension Fund v. Hartlage Truck, 991 F.2d 1357, 1360 (7th Cir. 1993). Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Although the Fund is not a party to the CBAs, it is a third-party beneficiary, Central States v. Gerber Truck, 870 F.2d 1148, 1151 (7th Cir. 1989), and is authorized to pursue a collection action under 29 U.S.C. § 1132(a)(3)(B)(ii). That section provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan."

---

[7](...continued)
statement, including, in the case of any disagreement, specific references" to the record, as well as "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Musson's counsel have violated L.R. 56.1 by failing to specifically admit or deny numerous paragraphs of the Fund's Statement of Facts, and by adding additional facts into its response paragraphs, instead of in a separate statement. Additionally, a party's legal argument should be contained in its memorandum of law. It is wholly inappropriate and a frustrating waste of this court's resources and time for counsel to make their arguments against summary judgment in its L.R. 56.1 answer instead of in their memorandum of law. Counsel for plaintiffs are admonished to follow the Local Rules in the future.

### A. Count One

In its initial answer, Musson admitted liability for the two employees addressed in Count One of the counterclaim.[8] The only defense Musson presents is related to the time period for which it is liable.[9]

The Fund seeks missing contributions from May 27, 2001, the date when Musson initially joined the Fund. Under Article XI, Section 7 of the Trust Agreement, there is a ten-year limitations period for the commencement of claims to collect contributions under Section 515 of ERISA 29 U.S.C. § 1145. The Trust Agreement further establishes that the limitations period does not begin to accrue with respect to any unpaid contributions until the Fund receives actual written notice of the existence of the cause of action. Musson acknowledges that the Fund's claim accrued when the Fund received notice of Musson's potential liability once the 2012 audit was complete. Musson argues, however, that the ten-year provision is unfair because Musson did not conduct an audit prior to 2012, and there is therefore a "'tail' of potential liability[] and adjudication of liability on stale facts." This defense, which appears to be an equitable defense, is wholly unsupported by any facts or case law, and is not pled in Musson's answer to the counterclaim. The court therefore rejects Musson's argument that the ten year provision is unfair.

---

[8] The court notes that, even if the court granted Musson's motion to amend in part in order to allow Musson to withdraw its admission of liability on Count One, Musson has not offered any defense to the Count other than the oral modification argument.

[9] The court notes that these affirmative defenses are not contained anywhere in Musson's response to the summary judgment motion. Musson has placed the burden on the court to find its arguments in its other filings.

Musson also argues that any collection of delinquencies in contributions to that Fund should be calculated by application of the Wisconsin 6 year statute of limitations period. Musson does not provide a reason to support the application of the Wisconsin statute of limitations, although the Fund speculates that Musson's argument is based on the initial venue of this lawsuit. See Cent. States, Se. & Sw. Areas Pension Fund v. Jordan, 873 F.2d 149, 152 (7th Cir. 1989) (stating that the default rule in ERISA cases is to adopt the appropriate state statute of limitations period for claims for delinquent contribution). The instant case was initially filed in Wisconsin, but it was transferred to this district upon defendant's motion to transfer venue. The transferring judge accorded significant weight to the fact that the parties had a forum selection clause in the Trust Agreement that designated Illinois as the appropriate forum. Because the parties consented to venue in Illinois, and the Trust Agreement explicitly applies the Illinois statute of limitations, the court finds the ten-year Illinois statute period to be appropriate. Id. at 154.

The second affirmative defense Musson presents is that an additional audit for the years 2001-2010 is necessary in order for the Fund to seek contribution for that time period. Musson also fails to offer any support for this defense. Under the terms of the Trust Agreement, there are no predicate requirements that the Trustees must satisfy before instituting legal proceedings for contributions. The court therefore rejects Musson's second affirmative defense, and grants the Fund's motion for summary judgment on Count One.

**B.    Count Two**

Count Two concerns the dispute regarding the seven non-covered employees that was presented to the Board of Trustees at the January 2013 meeting. The Fund argues that Article V,

Section 2 the Trust Agreement gives the Trustees discretionary authority to resolve disputes.[10]

That provision states:

> All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits, preferred by any participant, beneficiary or any other person or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions...

The Fund argues that explicit grants of discretion to the Board of Trustees are "judicially reviewable only for abuse of discretion, which is to say deferentially." Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 653 (7th Cir. 2001); see also Suburban Teamsters of N. Illinois Welfare & Pension Funds v. Moser, 867 F. Supp. 665, 670 (N.D. Ill. 1994). Therefore, the Fund asserts that the Board of Trustees' decision can be overturned only if it is arbitrary and capricious. Musson concedes that arbitrary and capricious review is appropriate, but argues that the court should award the Board's decision reduced deference because of the Trustees' potential conflict of interest and the allegedly unreasonable procedures followed by the Board in their hearing. Musson alleges a potential conflict of interest exists because it is in the Trustees' interest to maximize the contributions to the Fund. Musson

---

[10] Under the 2001 Bargaining Unit Participation Agreement and the 2007 Bargaining Unit Participation Agreement, Musson agreed to be bound by the provisions of the Fund's Trust Agreement and agreed to pay contributions to the Fund in accordance with the CBAs.

also argues that the procedures were unfair because the proceeding before the Board of Trustees was ex parte, and the record before the Board was allegedly incomplete.[11]

A number of courts in this district have discussed whether arbitrary and capricious review of a Trustee's decision regarding delinquent contributions is appropriate when there is a potential conflict of interest. See Moser, 867 F. Supp. at 670; Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc., 268 F.R.D. 312, 315 (N.D. Ill. 2010) aff'd, 674 F.3d 630 (7th Cir. 2012). In Moser, the court found that the Fund's interests were protected by a delegation of authority to the Board of Trustees, and the employer's interests were likewise protected because the trust agreement provided for employer representatives on the Board of Trustees. Moser, 867 F. Supp. at 670. The same situation exists in the instant case; Article II, Section 2 of the Trust Agreement for the Fund provides for "four persons representative of the Employers" on the Board of Trustees, which equates to one-half of the Board's membership. Under the reasoning of Moser, with which this court agrees, Mussons' concerns regarding a potential conflict of interest are therefore mitigated.

Regarding Musson's objection to the ex parte nature of the proceeding, Musson was aware of and consented to the terms of the Trust Agreement that provided for this procedure. It cannot now object to the very procedures to which it consented. Regarding Musson's claim that

---

[11]Musson simultaneously argues that Article V, Section 2 the Trust Agreement does not give the Trustees authority to resolve disputes about contributions, but rather is a mechanism to allow the Trustees to review claims by employee participants and their beneficiaries. Musson argues that Article III, Section 4, which grants the trustees discretion to initiate legal proceedings, is the more appropriate course of action. The plain language of Article V, Section 2, however, states that any controversy "as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund" may be submitted to the Trustees. Controversies over contributions fall within that language.

13

the record before the Trustees was incomplete, the court notes that the record indicates that Musson's complaint in this matter, and thus its asserted position as of December 2012, was submitted to the Board of Trustees. The relevant agreements, including the CBAs, the relevant Participation Agreement, and the Non-Bargaining Unit Participation Agreement, were also submitted to the Board of Trustees. Musson contends that, with additional time and notice, it would have developed its theory regarding Kaiser as an agent of the Fund, and that it should now have the opportunity for a rehearing before the Board of Trustees to present that defense.

The court rejects this argument as unpersuasive. Musson had every opportunity to present its chosen theory of defense when it instituted the instant action in federal court. The complaint Musson filed did not assert the (meritless) oral modification argument Musson now seeks to submit to the Board of Trustees. The position that Musson advocated when it filed this action is the position that was presented to the Trustees at the January 2013 meeting, and it is not procedurally unreasonable for the Board to have reviewed that stated position. Musson's delayed attempts to revise its position do not entitle it to a rehearing, or to a less deferential standard of review. Under the reasoning of <u>Moser</u> and <u>Waste Mgmt.,</u> the deferential abuse of discretion standard may appropriately be applied in this case.

The Board of Trustees made numerous findings at the January 2013 meeting after the consideration of the dispute. Those findings included:

> 2. The 2001 Non-Unit Participation Agreement . . . remains in full force and effect and was not superseded or modified by the 2007 Bargaining Unit Participation Agreement or the 2007-2010 CBA or the 2010-2013 CBA. The Non-Unit Participation Agreements and the 2007 Bargaining Participation Agreement and CBA are separate contracts between different parties covering different employees. These conclusions are supported by the following:

14

a. The 2001 Non-Unit Participation Agreement is an agreement between the Fund and Musson. Since Local Union 662 is not party to the Non- Unit Participation Agreement and does not represent the non-unit employees, it did not have authority to cancel the 2001 Participation Agreement.

b. Musson's contention that the 2001 Non-Unit Participation Agreement has been superseded is inconsistent with the language of the two Participation Agreements which indicate that they cover different employees. The 2007 Participation Agreement applies to the bargaining unit of drivers and mechanics. The 2001 Non-Unit Participation Agreement applies to all other Musson employees. Thus, the subject matter of the two Participation Agreements is different. The fact that the 2010-2013 CBA mentions the commitment to contribute on non-unit employees does not mean the non-unit employees are covered by the 2010-2013 CBA because they are not covered in the recognition clause or the other provisions of the 2010- 2013 CBA.

c. lf the 2007 Participation Agreement and the 2010-2013 CBA eliminate the duty to contribute on some of Musson's non-unit employees as Musson contends, they create an impermissible conflict with the Fund's "all-in" rule which is incorporated in the 2001 Non-Unit Participation Agreement.

d. Musson's position is not consistent with the practice of the parties. Since 2007, Musson has contributed on management and supervisory employees (its president and office manager, and perhaps others) and the Fund has provided coverage for these individuals. Indeed, contributions were received on the president and office manager for November and December 2012 after the attorney's letter contending that Musson had no duty to contribute on management and supervisory employees.

e. Four of the seven employees listed in Musson's Complaint were employed before the 2007 Participation Agreement, yet contributions were not paid on their behalf. This fact plus the payment of contributions on some management/supervisory employees since 2007 establishes that Musson's defense is merely pretextual and its non-payment on the seven employees really had nothing to do with the 2007 Participation Agreement, the 2007-2010 CBA or the 2010-2013 CBA, the real reason was Musson's erroneous belief that it could exclude employees who had alternate benefit coverage from participation.

f. Paragraph 7 of the Non-Unit Participation Agreement required Musson to provide the Fund with a written notice of termination which has not occurred so it has not terminated. Indeed, when the 2007 Participation Agreement and 2007-2010 CBA were sent to the Fund and the 2010-2013 CBA was sent to the Fund, neither Musson nor Local662 advised the Fund that they

15

intended to supersede the 2001 Non-Unit Participation Agreement. Nor was this claim ever made before the audit claim was asserted in 2012.

The Trustees' decision that the 2001 Non-Bargaining Unit Participation Agreement was not superseded by the 2007 Bargaining Unit Participation Agreement or the 2010-2013 Collective Bargaining Agreement was reasonable. The findings provide a complete analysis of the issues presented to the Board of Trustees and document the sound reasoning of the Board. In fact, Musson does not object to the actual findings by the Board, but rather to the procedures followed, which this court has already approved. Under the findings of the Board, Musson is responsible for contributions for the seven non-covered employees under the 2001 Non-Unit Participation Agreement. Because the court finds no error with the conclusions of the Board, it upholds the Board's conclusion that contributions are due on the non-covered employees and grants the Fund's motion for summary judgment on Count Two.

## **CONCLUSION**

For the foregoing reasons, the court denies plaintiff's motion to amend its answer to the counterclaim and grants the defendant Fund's motion for partial summary judgment on the issue of liability. This matter is set on April 16, 2014, at 9:00 a.m., for a report on the procedure for determining the amount of contributions due from Musson.

**ENTER:** April 2, 2014

_____
**Robert W. Gettleman**
**United States District Judge**